PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE COUSTODY

FILED

Name: <u>Packnett</u>     <u>Kenneth</u>     J.
    (Last)        (First)     (Initial)

08 JAN 28  AM 10: 08

Prisoner Number: <u>C94858</u>

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Institutional Address: <u>CSP-SQ 1-N-37-L</u>

---

UNITED STATES DISTRICT CCOURT

NORTHERN DISTRICT OF CALIFORNIA

C 08 0632

**KENNETH JEROME PACKNETT**

Full Name of Petitioner

Case No. (to be provided by the
Clerk of court)

**JF**

vs.

**(PR)**

<u>ROBERT AYERS (San Quentin State Prison, Warden)</u>  PETITION FOR A WRIT OF HABEAS CORPUS

Name of Respondent
(Warden or jailor)

---

## Read Comments Carefully Before Filling In

### When And Where To File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were <u>not</u> convicted or sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined Habeas L. R. 2254-3(b).

### Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody your are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered

A.    INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1.  What sentence are you challenging in this petition

(a)  Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland)

Los Angeles County Superior Court _____     Los Angeles California _____
               Court                                              Location

(b)   Case number, if known A741172 _____

(c)   Date and terms of sentence January 2, 1991; 56 years _____

(d)   Are you now in custody serving this term?  (Custody means being in jail, on parole or probation, etc.)  Yes ☒  No ☐

Where? San Quentin State Prison _____     San Quentin, CA 94964 _____
               (Name of Institution)                    (Address)

2   For what crime were you given this sentence?  (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code number if known.  If you are challenging more than one sentence, you should file a different petition for each sentence.)

Driving without Consent; Forcible Rape (3 counts); Forcible Oral (3 counts); Rape with Object.
V.C. § 10851(a); P.C §§ 261, 288(c), 289 _____

3   Did you have any of the following?

Arraignment: Yes ☒ No ☐  Preliminary Hearing Yes ☒ No ☐  Motion to Suppress: Yes ☐ No ☒

4   How did you plea?

Guilty _____ Not Guilty X _____  Nolo Contendere _____

Any other plea (specify) N/A _____

5   If you went to trial, what kind of trial did you have?

Jury ☒  Judge alone ☐  Judge alone on a transcript ☐

6   Did you testify at your trial?  Yes ☒  No ☐

7   Did you have an attorney at the following proceedings:
(a)   Arraignment  Yes ☒  No ☐
(b)   Preliminary hearing  Yes ☒  No ☐
(c)   Time of plea  Yes ☐  No ☐
(d)   Trial  Yes ☒  No ☐
(e)   Sentencing  Yes ☒  No ☐
(f)   Appeal  Yes ☒  No ☐
(g)   Other post-conviction proceeding  Yes ☐  No ☒

8    Did you appeal your conviction? Yes ☒ No ☐

    (a)    If you did, to what court(s) did you appeal?

| | | | |
|---|---|---|---|
| Court of Appeal | Yes ☒ No ☐ | <u>1991</u><br>(Year) | <u>affirmed</u><br>(Result) |
| Supreme Court of California | Yes ☐ No ☒ | _____<br>(Year) | _____<br>(Result) |
| Any other court | Yes ☐ No ☒ | _____<br>(Year) | _____<br>(Result) |

    (b)    If you appealed, where the grounds the same as those that you are raising in this petition?  Yes ☐ No ☒

    (c)    Was there an opinion?    Yes ☒ No ☐

    (d)    Did you seek permission to file a late appeal under Rule 31(a)  Yes ☐ No ☒

If you did, give the name of the court and the result:

_____

9    Other than appeal, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes ☒ No ☐

NOTE: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if the petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

    (a)    if you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.    Name of Court ___<u>Los Angeles County Superior Court  ( A741172)</u>___

Type of Proceeding __<u>Habeas</u>_____

Grounds raised (Be brief but specific):

a.    ___<u>Same as in this petition</u>_____

b.    _____

c.    _____

d.    _____

Result _<u>Petition denied</u>_____ Date of Result _<u>August 28, 2007</u>_

II.    Name of Court <u>California Court of Appeal, Second Appellate District, division 7  ( CA # 202680)</u>

Type of Proceeding __<u>Habeas</u>_____

Grounds raised (Be brief but specific):

a.    ___<u>Same as in this petition</u>_____

b. _____

c. _____

d. _____

Result __Petition denied_____ Date of Result _____

III.    Name of Court__California Supreme Court (S157489)_____

Type of Proceeding __Petition for Review_____

Grounds raised (Be brief but specific):

a.    __Same as in this petition_____

b. _____

c. _____

d. _____

Result __Denied_____ Date of Result November 28, 2007

(b)  Is any petition, appeal or other post-conviction proceeding now pending in any

court?.                              Yes ☐  No ☒

_____

(Name and location of court)

B.    GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully.  Give facts to

support each claim.  For example, what legal right or privilege were you denied?  What happened?

Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

nee more space.  Answer the same questions for each claim.

Note  You must present ALL your claims in your first federal habeas petition.  Subsequent

petitions may be dismissed without review on the merits.  28 U.S.C. § 2244(b); McCleskey v. Zant,

499 US. 467, 111 S.Ct. 1454, 113 L. Ed. 2nd 517 (1991)

Claim One: The sentencing court's imposition of the aggravated term in this case, violates

petitioner's constitutional rights to a finding of aggravation by the jury (Sentencing Transcript

pgs. 23-25 )._____

Supporting Facts: In imposing the aggravated term, the trial court use factors **not found** to

be true by the jury. At sentencing the court addressed the lawfulness of imposing the aggravating term and decided the aggravating term is authorized in this case. (Sentencing Transcript pgs. 23-25 ).

Since this time, the United States Supreme Court has evaluated California's sentencing law and determined that in imposing the aggravated term, it too violates petitioner's constitutional rights to a fact finding of aggravating by the jury. As such petitioner's term is (13)  thirteen years greater than constitutionally permissible.  Additionally, the California Supreme Court found when the question before the court concern excessive punishment, a 20 year delay in bring this claim before the court is not barred.

Claim Two:  On habeas, the Supreior Court agrees that the imposition of petitioner's aggravated terms violaitons petitioner's constitutional rights as defnied by the U.S. Supreme Court in Cunningham v. California.  Despite this reasoning the superior court abused its discretion in failing to correct and apply Cunningham in light of its common law application.

Supporting Facts: The Superior Court reasoned, despite its common law application, Cunningham v. California is not applicable in this case due to the timing of petitioner's conviction. The court further concludes that even if Cunningham supra, applies, the court can and will avoid correcting this constitutional error by merely applying the changes in the sentencing law (since Cunningham), retroactively to petitioner, despite its disfavorable effect.  By this analysis, no Cunningham error need be corrected.

Claim Three: _____

_____

Supporting Facts: _____

_____

_____

_____

If any of these grounds was not previously presented to any other court, state briefly which grounds were

not presented and why

N\A _____

List by name and citation only, any cases that you think are close factually to yours so that the are an example of the error you believe occurred in your case. Do no discuss the holding or reasoning of these cases:

Cunningham v. California, 166 L.Ed. 2nd 856 (U.S. 2007); In re Ward, (1966) 64 C. 2nd 672, 675; In re Birdwell,  50 CA 4th 926; Locke v. Davey, 540 U.S. 712, (U.S. 2004); Wilkinson v. Dotson, 544 U.S. 74, (U.S. 2005)

Do you have an attorney for this petition    yes ☐  no ☒

If you do, give the name and address of your attorney:

N\A

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on _1-15-08_                          _Kenneth Jerome Parknett_
                 Date                                            Signature of Petitioner

PLEASE PRESS FIRMLY

PLEASE PRESS FIRMLY

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE

Flat Rate Envelope

Place

HOW TO

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code

Day of Delivery
☐ Next ☐ 2nd ☐ 2nd Day   Postage
$

Date Accepted   Scheduled Date of Delivery   Return Receipt Fee
$

Mo. Day Year   Scheduled Time of Delivery   COD Fee   Insurance Fee
☐ Noon ☐ 3 PM   $   $

Time Accepted ☐ AM ☐ PM   Military
☐ 2nd Day   Total Postage & Fees
$

Flat Rate ☐ or Weight
lbs.   ozs.   Int'l Alpha Country Code   Acceptance Emp. Initials

E B 6 3 1 0 2 2 1 7 U S

**FROM:** (PLEASE PRINT)   PHONE (

MR. KENNETH JEROME PACKNETT
C-94858 1-1-37-L
SAN QUENTIN STATE PRISON
CDC-SAN QUENTIN
SAN QUENTIN, CA 94974

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call **1-800-222-1811**

Visit us at usps.com   We Deliver!

---

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

**DELIVERY (POSTAL USE ONLY)**

Delivery Attempt   Time ☐ AM ☐ PM   Employee Signature

Mo. Day

Delivery Attempt   Time ☐ AM ☐ PM   Employee Signature

Mo. Day

Delivery Date   Time ☐ AM ☐ PM   Employee Signature

Mo. Day

**CUSTOMER USE ONLY**

WAIVER OF SIGNATURE

**TO:** (PLEASE PRINT)   PHONE (

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**Post Office To Addressee**
**Addressee Copy**
Label 11-B, March 2004

---

CONFIDENTIAL
LEGAL MAIL

When used internationally affix customs declarations (PS Form 2976, or 2976A).

Cradle to Cradle Certification is awarded to products that pursue an innovative vision of ecologically-intelligent design that eliminates the concept of waste.

This USPS® packaging has been certified for its material content, recyclability, and manufacturing characteristics.

Please recycle.

Paper

Exhibit 'A'

Court of Appeal, Second Appellate District, Div. 7 - No. B 202680
**S157489**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re KENNETH JEROME PACKNETT on Habeas Corpus

The petition for review is denied.

SUPREME COURT
# FILED

NOV 2 8 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

1
2
3
4
5
6
7
8          SUPERIOR COURT OF THE STATE OF CALIFORNIA
9             FOR THE COUNTY OF LOS ANGELES
10
                                    ) Case No.: No. A741172
11   KENNETH JEROME PACKNETT,        )
                                     ) PETITION FOR WRIT OF HABEAS
12          Petitioner,              ) CORPUS – DENIED
                                     )
13      vs.                          )
                                     )
14   ROBERT AYRES,                   )
                                     )
15          Respondent.              )
                                     )
16   _____)

17                        **HISTORY**

18      The factual and procedural history of Petitioner's case is set

19   forth in the opinion of the Court of Appeal that affirmed his

20   conviction (see attached).

21      Petitioner's conviction and sentence were final on appeal on

22   June 16, 1993 (see attached "Case Information" sheet).

23                       **PETITION**

24      Petitioner asserts that the imposition of any and all aggravated

25   terms in his sentence violates the holding of *Cunningham v.*

26   *California* (2007) __ U.S. __.

27      Separately, Petitioner implicitly asserts that the sentence

28   imposed was "excessive" and that the *Cunningham* decision therefore

1  applies retroactively to the date of the judgment in Petitioner's

2  case.

3                              **RULING**

4                                 I

5      **A. A Petitioner Who Has Exhausted All Appellate Remedies Is**
       **Estopped From Retroactively Applying New Procedural**
6      **Protections By Petition For Writ of Habeas Corpus.**

7      The Petitioner asserts that the recent *Cunningham* ruling

8  (discussed in Section B, below) permits him to file a petition for

9  writ of habeas corpus to request relief. However, petitioner's case

10 is final and "a new rule for cases for the conduct of criminal

11 prosecutions is to be applied retroactively to all cases [that are]

12 pending on direct review or not yet final, *with no exception for*

13 *cases in which the new rule constitutes a 'clear break' with the*

14 *past.*" (*Griffith v. Kentucky* (1987) 479 U.S. 314, 328, *italics*

15 *added*.)

16     The U.S. Supreme Court addressed the issue of retroactivity in a

17 series of cases that began in 2000. These cases are often referred

18 to as the *Apprendi* line of cases: *Apprendi v. New Jersey* (2000) 530

19 U.S. 466; *Blakely v. Washington* (2004) 542 U.S. 296; and *Cunningham*

20 *v. California* (2007) 127 S.Ct. 856. Also related to the *Apprendi*

21 line is *United States v. Booker* (2005) 543 U.S. 220.

22     *Apprendi* stated that "[o]ther than the fact of a prior

23 conviction, any fact that increases the penalty for a crime beyond

24 the statutory maximum must be submitted to a jury, and proved beyond

25 a reasonable doubt." (530 U.S. at p. 490.) The first part of the

26 quote broadly refers to recidivism enhancements, the second portion

27 provides a defendant the protection that a second crime that is an

28

1  element of the first crime, or any element of any charged crime, must
2  be submitted to the jury for a verdict.

3      In *Blakely,* the U.S. Supreme Court extended *Apprendi* to
4  circumstances where a defendant's punishment is increased by the use
5  of facts other than those based solely on a jury verdict or plea.
6  (542 U.S. at p. 303.)

7      The U.S. Supreme court then discussed the retroactivity of the
8  *Apprendi-Blakely* line of cases in *Booker,* 543 U.S. at p. 268: "As
9  these dispositions, indicate, we must apply today's holdings – both
10 the Sixth Amendment holding and our remedial interpretation of the
11 Sentencing Act - to all cases on direct review." The *Booker* court
12 continued: a case that is on direct review and not yet final does not
13 mean that the court believes every sentence where a judge has made a
14 finding that affects a Petitioner's sentence gives rise to a Sixth
15 Amendment violation. "Nor do we believe that every appeal will lead
16 to a new sentence hearing.   That is because we expect reviewing
17 counts to apply ordinary prudential doctrines, determining, for
18 example whether the issues was raised below and whether it fails the
19 'plain-error' test. It is also because, in cases not involving a
20 Sixth Amendment violation, whether resentencing is warranted or
21 whether it will instead be sufficient to review a sentence for
22 reasonableness may depend upon application of the harmless error
23 doctrine." (*Ibid.*)

24     California appellate courts have followed this approach and have
25 also declined to apply *Blakely* retroactively. In *re Consiglio* (2005)
26 128 Cal.App.4[th] 511, 514 (*quoting Schriro v. Summerlin* (2004) 542 U.S.
27 348, 352), stated "[n]ew rules of procedure [rules that regulate only
28 the manner of determining the defendant's culpability]... generally

1  do not apply retroactively to final cases because, in contrast to new

2  substantive rules, '[new procedural rules] do not produce a class of

3  persons convicted of conduct the law does not make criminal, but

4  merely raise the possibility that someone convicted with use of the

5  invalidated procedure might have been acquitted otherwise." "[R]ules

6  that allocate decision making authority [between the judge and jury]

7  are prototypical procedural rules." (*Consiglio*, 128 Cal.App.4[th] at p.

8  514.) "[O]nly a small set of 'watershed rules of criminal

9  procedure'implicating the fundamental fairness and accuracy of the

10  criminal proceeding are given retroactive effect to final cases."

11  (*Id., quoting Schriro*, 542 U.S. at p. 352.) The *Consiglio* court

12  observed that courts have consistently rejected the notion that

13  *Apprendi* represents a "watershed rule of criminal procedure." (*See,*

14  *e.g., United States v. Jenkins* (3d Cir. 2003) 333 F.3d 151, 153-

15  154(cert. denied (2003) 540 U.S. 932); *United States v. Sanders* (4th

16  Cir. 2001) 247 F.3d 139,149-151 (cert. denied (2001) 534 U.S. 1032);

17  *United States v. Brown* (5th Cir. 2002) 305 F.3d 304, 309 (cert. denied

18  (2003) 538 U.S. 1007); *United States v. Moss* (8th Cir. 2001) 252 F.3d

19  993, 997 (cert. denied (2002) 534 U.S. 1097); *United States v.*

20  *Sanchez-Cervantes* (9th Cir.2002) 282 F.3d 664, 669-670 (cert. denied

21  (2002) 537 U.S. 939); *McCoy v. United States* (11th Cir. 2001) 266 F.3d

22  1245, 1257-1258 (cert. denied (2002) 536 U.S. 906).) Since *Apprendi*

23  is not applied retroactively, the *Consiglio* court reasoned that

24  *Blakely*, which only clarified and extended the holding in *Apprendi*,

25  was merely a procedural rule and therefore not entitled to

26  retroactive application to cases final as of the date it was filed.

27  (*Consiglio*, 128 Cal.App.4[th] at p. 516.)

28

1    In *People v. Amons* (2005) 125 Cal.App.4th 855, the appellate
2  court reached a similar conclusion. In 1999, the Amons sentencing
3  court had imposed the upper term of four years on an assault by means
4  of force likely to inflict great bodily injury (PC § 245(a)(1)) and
5  an admitted enhancement for personally inflicting great bodily
6  injury. The sentence was suspended and when the defendant later
7  violated his probation, the court ordered the suspended sentence into
8  execution on January 22, 2004. Like *Consiglio*, *Amons* concluded that
9  *Blakely* was not a case that warranted retroactive application. "New
10  constitutional rules of criminal procedure are applicable to those
11  cases which have become final before the new rules are announced.
12  'if, and only if, it falls within one of two narrow exceptions to the
13  general rule of non-retroactivity." (*Id.* At p. 864; see also *Leavitt*
14  *v. Arave* (9th Cir. 2004) 383 F.3d 809, 823 (cert. denied (1992) 506
15  U.S. 972).) A new rule is not given retroactive application to
16  convictions already final "unless the new rule[1]places certain kinds
17  of primary, private individual conduct beyond the power of the
18  criminal law-making authority to proscribe, or [2] could be
19  considered a watershed rule of criminal procedure." (*Amons* 125
20  Cal.App.4th at pp. 864-865, quoting *United States v. Montalvo* (9th
21  Circ. 2003) 331 F.3d 1052, 1055). The *Amons* court found that *Blakely*
22  merely established a new procedural rule and was not a "watershed"
23  case. (*Ibid.*)

24    Moreover, *Blakely* was not given retroactive application in
25  *Cooper-Smith v. Palmateer* (9th Cir. 2005) 397 F.3d 1236 (cert. denied
26  (2005) 126 S.Ct. 442). In a federal habeas proceeding, the petitioner
27  contended his aggravated dangerous offender sentence imposed by the
28  trial court in 1987 violated the holding in *Blakely*. The appellate

1   court rejected the contention, holding that *Blakely* was not
2   retroactive to cases final as of the date of the decision. (Id. At
3   pp. 1245-1246.)

4       Petitioner is therefore not entitled to retroactive relief by
5   resentencing.

6   **B.  The Recent Case of *Cunningham v. California* (2007)**
7       **__ U.S. __ Does Not Provide The Petitioner With Grounds**
    **For Habeas Corpus Relief.**

8       The Petitioner seeks habeas relief from his convictions based on
9   the United States Supreme Court's recent decision in *Cunningham v.*
10  *California* (2007) ___ U.S. ___. In that decision, the Court applied
11  its decision in *Blakely* 542 U.S. 296, to California's determinate
12  sentencing laws.

13      The *Blakely* decision involved a change in procedural rather than
14  substantive law. As such, it has no retroactive impact on cases that
15  were already final (*Consiglio*, 128 Cal.App.4th at 514). From the
16  discussion, supra, of the *Apprendi* line of cases, *Cunningham* is even
17  further removed'from *Apprendi* than *Blakely* and will not apply to
18  cases that are final as of *Blakely's* filing date of June 24, 2004
19  (*Amons*, 125 Cal.App.4th at p. 863-864; *Schriro*, 542 U.S. at p. 351;
20  *People v. Davis* (1997) 57 Cal.App.4th 1404, 1408, fn.6.). Because
21  *Cunningham* did not establish a new rule, but merely applied the
22  existing standard of *Blakely*, there is no rationale to make
23  *Cunningham* retroactive since it has been held that *Blakely* is not
24  retroactive.

25      Petitioner's case has been final for many years (at least since
26  1993). *Blakely* was decided on June 24, 2004. Therefore, on this
27  basis alone, neither *Blakely* nor *Cunningham* provide petitioner with
28  any basis for relief.

C. **Even If The Petitioner Were Eligible For Resentencing,**
   **The Legislative Response To** *Cunningham v. California*
   **Would Deny Petitioner Relief.**

If Petitioner were eligible for resentencing based on the U.S. Supreme Court's *Cunningham* decision, any new sentencing hearing would be conducted under newly enacted Senate Bill 40, passed by California Legislature and effective March 30, 2007.

SB 40 procedurally changed PC § 1170(b) and states that choice of the appropriate term shall rest within the discretion of the court. The middle term is no longer the presumptive term and the court has full discretion to apply the middle, lower or upper term. The court shall set forth on the record the reasons for imposing the term selected. This effectively removes any elements of a presumptive or mandated term, and any required findings of fact by the court. Furthermore, it was the *Cunningham* court that suggested this exact wording to the California Legislature: "to permit judges genuinely 'to exercise broad discretion ... within a statutory range, which, 'everyone agrees,' encounters no Sixth Amendment [shoal]." *Cunningham*, 127 S.Ct at p.866.) This is exactly what the Legislature did within weeks of the *Cunningham* decision.

When the *Cunningham* court suggested that the California Legislature exercise its discretion with procedural statues, it did so based on a line of cases. In *Portley v. Grossman* (1980) 444 U.S. 1311, the Petitioner was first convicted of a federal crime in 1972, sentenced to six years and paroled in 1974. While on parole, the petitioner committed two California state crimes and parole was revoked. The Federal Parole Commission relief on the guidelines in effect in 1978 rather than those in effect when the appellant was originally sentenced in 1972. The new guidelines extended the time

1   to be served before re-release, a greater amount than at the time of
2   the original sentencing.    The appellant appealed, claiming the law
3   was applied ex post facto.    The *Portley* court held that "the
4   prohibition of ex post facto laws does not extend to every changed of
5   law that 'may work to the disadvantage of a defendant.' It is
6   intended to secure 'substantial personal rights' from retroactive
7   deprivation and does not 'limit the legislative control remedies and
8   modes of procedure which do not affect matters of substance."
9   (*Portley*, 444 U.S. at p.1312, quoting *Dobbert v. Florida* (1977) 432
10  U.S. 282, 293 (rehearing denied (1977) 434 U.S. 882).) "The change in
11  guideline assisting the Commission in the exercise of its discretion
12  is in the nature of a procedural change found permissible in
13  *Dobbert*." (*Portley*, 444 U.S. at p. 1312). If a change in the Parole
14  Commission's discretionary method to review parole eligibility is
15  deemed procedural, it follows that a change in sentencing guidelines
16  promulgated in SB 40 would also be deemed procedural.    SB 40 does not
17  change the punishment or the substantive rights of the defendant, but
18  instead provides the sentencing court with discretion to choose the
19  term imposed.

20      A Petitioner cannot argue that a case mandates a change in the
21  procedural application of the sentencing laws and not also expect the
22  court to utilize a procedural change to the penal code that was
23  enacted by the Legislature to respond to the decision.    Thus, if
24  Petitioner were able to apply *Cunningham* retroactively, any new
25  sentencing hearing would be conducted pursuant to the procedural
26  sentencing terms of SB 40 (*See Portley*, 444 U.S. at p. 1312.) Because
27  there were no mitigating factors at the time of sentence, the high

28

1  term sentences previously imposed would be re-imposed at any new
2  sentencing hearing.

3      Moreover, as the sentencing court made specific findings as to
4  factors in aggravation based on Petitioner's criminal record, an area
5  of consideration specifically excepted in *Cunningham*, and found no
6  factors in mitigation, the high term sentences previously imposed
7  would be reimposed in the event of any resentencing.

8                                    II.

9  **The Sentence Previously Imposed Was Not "Excessive" As A**
   **Matter of Law**

10     Petitioner alleges that retroactive application of *Cunningham* is
11 permitted because his original sentence was "excessive" and cites In
12 re *Ward* (1966) 64 C 2d 672, 675 and In re *Birdwell* (1996) 50 Cal App
13 4th 926 in support of his claim.

14     Neither of these cases stands for the proposition Petitioner
15 advances as both involved situations where the sentence imposed was
16 either illegal or was beyond the jurisdiction of the sentencing
17 court.

18     In Petitioner's case, the sentencing court was within its
19 jurisdiction and was acting legally when it imposed judgment on
20 Petitioner. Therefore, the sentence imposed was not "excessive" as
21 defined in the cited cases nor as a matter of law.

22     The petition is denied.

23     IT IS SO ORDERED.

24 Dated: _August 28, 2007_

25                                    _Antonio Barreto_
26                                    ANTONIO BARRETO, JR.
                                      Judge of the Superior Court

27
AB:pfe
28

No. B057832

(Super.Ct.No. A741172)

# COURT OF APPEAL

### SECOND APPELLATE DISTRICT
## DIVISION SEVEN

THE PEOPLE, Plaintiff and Respondent,

### VS.

KENNETH JEROME PACKNETT, Defendant and Appellant.

# O P I N I O N

COURT OF APPEAL - SECOND DIST.

F I L E D

JUN 16 1993

JOSEPH A. ____     Clerk

Deputy Clerk

NOT TO BE PUBLISHED

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

THE PEOPLE,

    Plaintiff and
    Respondent,

    v.

KENNETH JEROME PACKNETT,

    Defendant and
    Appellant.

B057832

(Super.Ct.No. A741172)

COURT OF APPEAL - SECOND DIST.
F I L E D

JUN 16 1993

JOSEP            Clerk

                Deputy Clerk

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie W. Light, Judge. Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Kenneth C. Byrne, Deputy Attorney General, and Tricia Ann Bigelow, Supervising Deputy Attorney General, for Plaintiff and Respondent.

2.

Kenneth Jerome Packnett appeals from judgment entered following a jury trial in which he was convicted of rape by a foreign object, three counts of rape, two counts of forcible oral copulation and unlawfully taking a vehicle. (Pen. Code §§ 289; 261, subd. (2); 288a, subd. (c); Veh. Code § 10851, subd. (a)). The court found true the allegation that he had previously been convicted of a serious felony within the meaning of Penal Code section 667, subdivision (a). He was sentenced to prison for a total of 56 years.

Appellant contends the court erred in denying his suppression motion, the court abused its discretion in permitting the prosecution to impeach him with four felony convictions, including three that were twelve years old, and the court erred at sentencing.

## STATEMENT OF FACTS

### Prosecution Evidence

On January 12, 1989, at approximately 7:00 a.m. defendant walked past Kier S., age 16, while she was walking to school and grabbed her from behind. He held a knife to her ear and said he was going to slice it. He then dragged her over to a car and pushed her in. Defendant told S. to put her head down and close her eyes. S. put her head down and closed one eye. Defendant started the car with

3.

something that looked like a screwdriver, drove down alleys
and then pulled into a carport where he turned the car off.
Defendant reached over and ripped S.'s bra through the front
of her shirt, pulled her underpants off and forced her to
orally copulate him. After about five minutes he raped
her. Defendant went through S.'s purse and took three
dollars. Defendant told S. to close her eyes and started
the car and drove for about ten or fifteen minutes. He
stopped the car in an alley, blocking a garage door, and
took her into an abandoned garage where he forced her to
remove her clothes and orally copulate him.[1]  Defendant put
his fingers into S.'s vagina and raped her. After about ten
or fifteen minutes, defendant fell asleep. Throughout the
rest of the day he raped her and forced her to orally
copulate him, falling asleep at various times throughout the
day. When S. tried to get up he woke up. Defendant told
her there was a lock on the door and she could not get out.
He put on a pair of gloves that looked like garden gloves
and stuck his gloved hand in her vagina then stuck a
screwdriver in her vagina. Defendant put a sweater over
S.'s head so she could not breathe and pulled out a belt and
hit her with it. He then choked her. Defendant made S.
call him, "Daddy." Thereafter, defendant let S. dress and

---

[1]  While S. did not see the knife defendant had
previously used, she was motivated to do what he said
because she did not know where it was.

4.

they walked out of the garage.  S. sat in the car with her
head down while defendant worked under the hood trying to
figure out why the car would not start.  Defendant went
across the alley to a man in a truck, who said he did not
have any cables.  After trying unsuccessfully to start the
car, defendant let S. go.

        S. walked fast and then ran to the next corner
where she went into a flower shop and asked to use the
phone.  The man at the shop would not let her use the shop's
phone but gave her a quarter for the pay phone.  S. was
picked up by her friend's mother.  S. told her parents what
happened and they called the police.

        · When the police responded, S. took the officers to
the garage where defendant had taken her.  She saw the Mazda
automobile in which she had been abducted and the man, later
identified as Edgar Gonzalez, defendant had asked for
cables.  The officers spoke to Gonzalez and he pointed up to
a building.  The officers subsequently returned from the
building with defendant in handcuffs.

        S. had a blue comb with her and other items, which
she saw the officers retrieve from the Mazda automobile.
Defendant had a blue bag containing tools on the floor of
the car while he was with S.  It had a drawstring.

        On January 10, 1989, Helen Mizoguchi owned a Mazda
RX7.  On that date she parked and locked the car in front of

5.

her house in Santa Monica. The next day she discovered her
car was not where she had parked it. She next saw her car a
few days later at an impound lot adjacent to a police
station. The ignition was missing as were speakers and
other items. She drove her car from the impound lot using a
screwdriver. She had given no one permission to take or use
her car after she had parked it.


Defense Evidence

        Defendant testified that S. approached him at a
motel looking for sex and drugs. They drove separately to a
garage near defendant's place of employment where they
smoked cocaine and had consensual sex. They were together
for several hours and left the garage around lunch time.

        Glenda Murphy, a medical transcriber who worked in
appellant's office testified that defendant arrived at the
office on January 12 between approximately 1:30 and 2:00.


Suppression Motion

        On January 12, 1989, Los Angeles police officer
Gregory H. Demirjian was working for the West Los Angeles
patrol when he received a radio call to investigate the
incident. He was given a description of the suspect and was
advised the suspect had possibly left in a gray stolen Mazda
automobile. Demirjian drove to the victim's apartment and

6.

at approximately 5:20 p.m. spoke to her. She told him that
earlier that day, at approximately 7:15 a.m. while on her
way to school, she observed a gray Mazda stop next to her, a
suspect get out of the car and approach her, and say
something to her about "cooperating or he'd slice her." The
suspect then pushed S. into the passenger side of the car.
The suspect drove to a carport in the area where he raped
her for approximately five to ten minutes, then drove
northbound to a location behind a tall building and a garage
where he raped her numerous times during the day. S. agreed
to show the officers the locations where defendant had
driven her and she and her mother got in the police car and
S. directed Demirjian to where she believed the rape
occurred. They ultimately arrived at a south alley at 8920
Wilshire Boulevard in Beverly Hills. When they pulled into
the alley, S. pointed to the gray Mazda RX-7 car that the
suspect had been driving. Demirjian's partner "ran the
license plate" and it returned as a Santa Monica stolen
vehicle. S. also pointed to a red pickup truck and stated
that defendant had had a conversation with the man standing
next to the truck about jumper cables. S. stated that
defendant had tan gloves at some point, that he smoked Camel
cigarettes and had a blue drawstring bag in the Mazda
vehicle at the time. S. also said her blue comb and pink
underpants were missing and three dollars had also been

7.

taken.

Demirjian spoke to Gonzalez, who was standing next
to the red pickup truck. Gonzalez recalled having a
conversation with someone regarding jumper cables and stated
the individual had been working in an adjacent building on
the fourth floor for eight months. At that point, believing
the suspect was in the building, Demirjian requested that
officers from the Beverly Hills Police Department meet him
at the location . Upon the arrival of the Beverly Hills
police officers, Demirjian, his partner Johnson, Gonzalez
and Officer Cornelius and Seargeant Douglas went to the
building's fourth floor. Gonzalez directed the officers to
suite 404.

Demirjian knocked on the door and Rudolph Preston,
opened it. Preston, who did not match the suspect's
description, was asked to come out into the hallway and was
searched and handcuffed. Demirjian asked if anyone else was
in the office and Preston said his wife and stepson were in
the office. When Demirjian, who had identified himself and
who was in uniform, asked if he could go inside, Preston
gave permission to enter.

When Demirjian entered he observed two women
straight ahead and defendant, who matched the victim's
description of the subject, sitting at a desk behind a

8.

partition. 2/

     Demirjian handcuffed defendant and S. positively
identified him as the person who raped her. Demirjian
noticed that defendant had a screwdriver, pack of Camel
cigarettes, a blue comb and a pair of tan gloves in his
pockets. Demirjian returned to the fourth floor office
where Johnson showed him a blue drawstring bag which he had
seen in plain view under defendant's desk and from which a
slide hammer was protruding. Based on his experience as a
police officer, it was Demirjian's opinion that a slide
hammer was used to punch ignitions and steal cars.
Demirjian took the blue drawstring bag down to his car and
opened it finding more screwdrivers, some speakers and a
pair of pink underpants. S. identified the underpants as
belonging to her. Demirjian took all of the items into
police custody as evidence.

     Preston testified that he was in the office when
the defendant was arrested. That evening when he opened the
office door, police immediately snatched him out, told him
to put his hands up behind his head and forced him to get
down on his knees. When Preston asked what was the problem,
the officers told him to shut up.

---

    2/ When S. told Demirjian about the incident she
stated the suspect possibly had a knife and that it felt
like a knife had been put against her throat. When
Demirjian walked into the office he felt the suspect he was
looking for might be armed.

9.

At the conclusion of testimony at the suppression hearing, the court informed the prosecutor that she had "a very rough road to hoe here with respect to consent." The court further noted that it probably did not make much difference whether Preston said it was okay to go into the office because under the circumstances it would be very difficult to find that it was free and voluntary as opposed to a reaction to the coercive effect of being grabbed by the police and handcuffed. The court stated it would listen to argument to the contrary but was just giving its present view. The court stated however that "we're dealing with so called 'fresh pursuit' or 'necessity' here."

Thereafter, when the hearing on the suppression motion resumed, the court stated it had reviewed the testimony of the witnesses and come to the conclusion that "the events at the door went down substantially as the police officers testified"; there was a request made of Preston for entry and Preston did give a verbal consent. Additionally, the court stated it was inescapably drawn to the conclusion that Preston was asked whether anyone else was inside before any officer entered and that he was asked whether they could enter, and that he said, "yes." The court said that the officers had probable cause to believe the perpetrator of the offense was inside, probable cause to believe he was armed, and that he was alerted to the fact

10.

that the police were there. The people inside the office
knew that the police were there, that they had made some
contact with Preston and detained him which heightened the
danger to the officers by further delay, and under the
circumstances the court found entry into the office was not
illegal.  Further, the court found there were no illegal
searches and all that was seized was something in plain
sight, the bag laying under the desk, from which a slide
hammer was protruding.  The officers were aware of the
stolen car and the slide hammer became an instrument of the
crime and therefore seizable.


### DISCUSSION

### SUPPRESSION MOTION

We reject appellant's first contention that the
warrantless arrest was illegal. Apart from whether
Preston's consent to enter the office was voluntary and
apart from whether the business office was a public place in
which there was no expectation of privacy (see People v. Lee
(1986) 186 Cal.App.3d 743, 746,), exigent circumstances,
rendered the officers' warrantless arrest proper.

"The Fourth Amendment to the United States
Constitution prohibits 'unreasonable searches and seizures.'
'[T]he arrest of a person is "quintessentially a seizure"'
within the meaning of the Fourth Amendment.  (Payton v. New

11,

York (1980) 445 U.S. 573, 585 . . . .) Although a
warrantless arrest in a public place does not offend the
Fourth Amendment so long as the arresting officer has
reasonable cause to believe that the person to be arrested
has committed a felony [citations], an arrest in a person's
home requires an arrest warrant. [Citations.] The warrant
requirement is excused, however, when exigent circumstances
require prompt action by the police 'to prevent imminent
danger to life . . . or to forestall the imminent escape of
a suspect or destruction of evidence.' [Citation.]"
(People v. Bacigalupo (1991) 1 Cal.4th 103, 122.)

Those factors relevant to determining whether
exigent circumstances exist to make a warrantless arrest are
"the gravity of the offense involved; whether the subject of
the arrest is reasonably believed to be armed; whether
probable cause is clear; whether the suspect is likely to be
found on the premises entered; and the likelihood that the
suspect will escape if not promptly arrested." (People v.
Bacigalupo, supra, 1 Cal.4th at p. 122; Dorman v. United
States (D.C. Cir. 1970) 435 F.2d 385, 392-393.)

Here only several hours had elapsed since the
commission of the crimes and the officers had been involved
in an ongoing field investigation leading to them to
defendant; they had probable cause to believe that defendant
was the perpetrator of the crimes and had been advised by a

12.

witness that defendant very likely was in the subject office
building; the crimes of which the defendant was accused were
grave; the officers were advised defendant had been armed
with a knife and they reasonably believed he was still
armed.  These circumstances support the trial court's
conclusion that exigent circumstances authorized defendant's
warrantless arrest.

Following the legal entry and arrest of defendant
the seizure from plain view of the blue drawstring bag with
the slide hammer exposed was legal.  (Lorenzana v. Superior
Court (1973) 9 Cal.3d 626, 634.)

## PRIOR FELONIES

The court allowed the defendant to be impeached
with four sanitized prior felonies convictions, three
convictions in 1978, grand theft, receiving stolen property
and grand theft auto and one in 1984 for kidnapping.
Defendant objected to the introduction of all the priors
arguing their prejudicial effect outweighed any probative
value.  On appeal, appellant claims the court abused its
discretion in permitting impeachment with four felony
convictions, including three that were twelve years old.
Appellant's contention is without merit.

In determining whether defendant could be impeached
with four prior felony convictions the court stated the

13.

prosecution was entitled to impeach defendant provided the
court went through the weighing process required under
Evidence Code section 352, which it had done. The court
noted that there would be some prejudice to defendant, but
it was admitting these priors despite their age because
appellant had not led a spotless life between these 1978
convictions and now but rather had led a life indicating a
continuing pattern or moral turpitude or readiness to do
evil. There was no abuse of discretion in permitting
defendant to be impeached by four sanitized prior felony
convictions, three felonies in 1978 and one in 1984. (See
People v. Burns (1987) 189 Cal.App.3d 734, 736-739.)

## SENTENCING

In choosing to sentence defendant to the upper term
for each of the offenses, the court stated the only
appropriate level was the upper term because there were no
factors in mitigation. As factors in aggravation the court
found great violence, great bodily harm or threat of it,
acts disclosing a high degree of cruelty, viciousness, or
callousness, "the whipping with the belt, the insertion of
the hand with the glove into the vagina, the slaps, the
punching around, coupled with, of course, continual threats,
the use of the degrading requirement that the victim call
him 'Daddy.'" Secondly, the court found the defendant was

14.

armed with and used a weapon in the commission of the
crimes. Additionally, the court found that defendant had
engaged in a pattern of violent conduct, which indicated a
serious danger to society, not only a pattern revealed in
this case but that defendant was on parole for a kidnapping
of a female at the time of the commission of this offense;
defendant had prior convictions as an adult and adjudication
of crimes as a juvenile that were numerous and of increasing
seriousness; defendant had served a prior prison term and
several terms in the CYA; defendant's prior performance on
probation under a CYA commitment and on parole as an adult
had been unsatisfactory; defendant had no remorse.

Appellant's contention that the trial court erred
in failing to enumerate a reason for imposing the upper-term
on each count is without merit. The trial court was not
required to separately state a reason for justifying the
imposition of each upper term. (See People v. Williams
(1984) 157 Cal.App.3d 145, 155-156; People v. Hetherington
(1984) 154 Cal.App.3d 1132, 1142.)

Additionally, any error in relying upon defendant's
lack of remorse or the fact that he was armed with a weapon
during the commission of the offenses is harmless. A single
aggravating factor is sufficient to justify imposition of
upper-terms and it is not reasonably possible that absent
error a different sentence would have been reached. (People

15.

v. Dreas (1984) 153 Cal.App.3d 623, 636.)

Appellant's related contention that the trial court erroneously used a single conviction to impose an enhancement and an upper term is without merit. The court used as one of the many reasons for imposing the upper term, the fact that defendant was on parole for a 1984 kidnapping conviction at the time of the instant offense. Additionally, the court imposed a five-year enhancement for this conviction. Contrary to appellant's assertion, the aggravating factor that was used to impose the upper-term was the breach of his special custodial status and the enhancement was imposed for his repeated commission of serious felonies and there was no prohibited dual use of facts. (See People v. Jerome (1984) 160 Cal.App.3d 1087, 1098; People v. Lewis (1991) 229 Cal.App.3d 259, 268.)

## SUPPLEMENTAL BRIEF

On March 25, 1993, this court issued an order which deemed a petition for writ of habeas corpus previously filed in proceeding B073481, a supplemental brief in the instant appeal. Respondent filed its response on April 23, 1993.

Appellant contends in this supplemental brief that the attorney-client and work product relationship were invaded, his privilege against self-incrimination was violated by reason of compelled prosecutorial discovery, and

16.

there was an abuse of judicial authority by conducting
proceedings outside his presence. We conclude these
contentions are without merit.

Appellant first claims that his due process rights
were violated because the prosecution was mistakenly given a
copy of the Marsden hearing transcripts. The prosecutor,
however, testified under oath that while she inadvertently
received these transcripts she never read any of them.
There was no evidence submitted to contradict this
assertion.

Appellant next contends his privilege against
self-incrimination was violated because the trial court
allowed the prosecution to make copies of the victim's
medical records which the defense had subpoenaed. The
prosecution requested a hearing pursuant to Evidence Code
section 402, asserting if the records belonged to the
victim, items such as her personal medical history might be
irrelevant. The court opened the records from the Beverly
Hills Hospital received pursuant to defendant's subpoena
duces tecum and asked the prosecution to make sure there
were no phone numbers or addresses of the victim. In doing
so, the prosecution noted there were a few pages of medical
records she did not have and asked for copies. Over
defendant's objection, the court allowed the prosecution to
make copies.

17.

Appellant's contention that the court erred in allowing the prosecution to view and copy the subpoenaed medical records is without merit. Pursuant to Evidence Code section 1560, subdivision (d) the trial court opened the subpoenaed records from the hospital. The issuance of such a subpoena duces tecum is "purely a ministerial act and does not constitute legal process in the sense that it entitles the person on whose behalf it is issued to obtain access to the records described therein until a judicial determination has been made that the person is legally entitled to receive them." (People v. Blair (1979) 25 Cal.3d 640, 651.) Thereafter the trial court had the authority to permit the prosecution to copy several of the pages missing from its files to avoid the unnecessary expenditure of additional time and taxpayer's money, pursuant to its duty under Penal Code section 1044 to control the proceedings with a view to the expeditious and effective ascertainment of the truth.

Appellant contends that there was an abuse of judicial authority because the trial court failed to require the prosecution to file written responses to defendant's motions in violation of California Rules of Court, rule 227.5. Contrary to appellant's claim, this rule does not require that written responses be made to every written motion.

Appellant's remaining claim he was denied a fair

18.

trial because there were impermissible ex parte
communications between the prosecution and the trial court
is unavailing. While appellant claims an ex parte
communication was made to Judge Albrecht, he had filed a
peremptory challenge against that judge and the trial was
presided over by Judge Leslie Light.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

LILLIE, P.J.

We concur:

JOHNSON, J.

WOODS (Fred), J.

# CALIFORNIA APPELLATE COURTS

Case Information



Welcome

Search

E-mail

Calendar

Help

Opinions

C|C
home

## 2nd Appellate District

Change court

Court data last updated: 08/08/2007 02:11 PM

Case Summary  Docket  Scheduled Actions  Briefs
Disposition  Parties and Attorneys  Trial Court

## Case Summary

| | |
|---|---|
| **Trial Court Case:** | A741172 |
| **Court of Appeal Case:** | **B057832** |
| **Division:** | 7 |
| **Case Caption:** | The People v Packnett |
| **Case Type:** | Criminal |
| **Filing Date:** | 01/02/1991 |
| **Oral Argument Date/Time:** | |

## Cross Referenced Cases

B054336 Packnett

Click here to request automatic e-mail notifications about this case.

© 2004 Judicial Council of California

# CALIFORNIA APPELLATE COURTS

## Case Information



| Welcome | **2nd Appellate District** | Change court |
|---|---|---|
| Search | Court data last updated: 08/09/2007 02:11 PM | |

**E-mail**

**Case Summary**   **Docket**   **Scheduled Actions**   **Briefs**
**Disposition**   **Parties and Attorneys**   **Trial Court**

**Calendar**

**Help**

## Disposition

**Options**

**The People v Packnett**
**Division 7**
**Case Number** B057832

| Description: | Affirmed in full |
|---|---|
| Date: | 06/16/1993 |
| Status: | Final |
| Publication Status: | Signed Unpublished |
| Author: | Lillie, Mildred L. |
| Participants: | Lillie, Mildred L. (Concur)<br>Johnson, Earl (Concur)<br>Woods, Fred Norvell (Concur) |
| Case Citation: | |

**Click here** to request automatic e-mail notifications about this case.

© 2004 Judicial Council of California